The appellants believe that the District Court committed error as a matter of law in terms of dismissing the case because it failed to appreciate a two-step inquiry under Missouri Defamation Law in terms of how you prove statements that are defamatory. So it seems to us that the District Court conflated the two steps in that it basically ignored the settled principle of law that the words that are alleged to be defamatory, the statement that is alleged to be defamatory, must be analyzed discreetly in terms of whether it is capable of defamatory meaning. And in this instance, we believe that the District Court basically engaged in an unjustified, under Missouri law, analysis of whether the words and language was just a response. Before you get into the details, can I ask sort of a jurisdictional question? Yes. This case was removed to federal court, right? Yes, it was. And as I understand it, the pleadings only plead damages of $60,000? Your Honor, you're… Do we have an amount and controversy problem here? I'm embarrassed, Your Honor, because I do not remember the $60,000 figure. This is the first time this has been raised, so I just in candor to the court. Obviously, the record is going to demonstrate what that pleading says. I didn't prepare for that, so I don't have that in my memory. I'm going to indulge in the assumption that the question implies that the court has some knowledge by virtue of looking at it because the court has an obligation to determine its jurisdiction at the outset. But based on that assumption, yeah, I mean, it's Missouri law. It's Missouri substantive law. There's no federal question presented on the face of the petition. Maybe you want punitive damages. Well, that's true. Well, you know, I think this… Well, I'm sorry. Go ahead. Well, no. So I'm attempting to accelerate my analysis to catch up to the court, obviously. I have to admit that off the top of my head, I do not know the state of the law as to whether a claim for punitive damages, when aggregated with a claim for actual damages that is less than the jurisdictional floor or… This is something that needs to be briefed, maybe. I don't know. Yeah, I mean, Your Honor, I'm flummoxed, but I'm proceeding. Why don't you move along to the merits, then? Okay. Very well. I would ask an opportunity to brief the issue post-oral argument, if possible. But to state the obvious, getting back to the merits, we think that the district court simply failed to appreciate the two-step analysis that is required under Missouri law in order to assess whether a particular language is defamatory. And in this instance, we think that the various words used that were cited explicitly in the petition that was removed to federal court make accusations of liar in conjunction with very specific factual allegations as to whether or not this is in conjunction with business activities. These types of statements have repeatedly been determined by Missouri courts to be defamatory per se. So we do not understand how the court ended up somehow, the district court ended up somehow looking to whether or not these statements were in response to an earlier post by my client and somehow were explained then as just some sort of puffery or statements of opinion in response to his statements. Before I interrupt for just a moment and ask you, before you get to the defense, as it were, the opinion matter, under Missouri law, do you also have to ask if it's, you said the first question is, is it capable of a defamatory meaning? You also have to ask if the answer to that is yes. Well, is it capable of a non-defamatory meaning? Right. And if so, and if it is, is that the end of the case under Missouri law? We think that that should be part, that the second part that your Honor just stated should be part of the, in effect, the defendant's burden of proof as to whether or not there is an opinion privilege. We do not think that the defendants, the appellees are correct, that you also have to somehow survive an analysis at the first step as to whether or not the language used actually is capable of an innocent meaning, which is I think what the court may be referring to. Some locations seem to suggest that, though, do they not? Right. And those are not, sometimes, perhaps not in this case, but sometimes people express the view that there's something contradictory about those, but I don't think there is necessarily. It may not be the law, but I don't think it's on its face asking both of those questions. It makes for a contradictory approach to the law of defamation. Well, I think that you have to look at the case law kind of sequentially in terms of how those, so you're in the Nazari case, for example, which I believe was a 2003 or so. That's the case in which the Missouri Supreme Court, I think, said that maybe these standards are not consistent. Isn't that right? Yeah, it did. I'm not sure why it said that, but we have to apply their law, of course, but we also have to understand it first. I agree with that. So that's what I'm trying to do. So the cases we find that we addressed in the briefs that apply this, do you fall down if, in fact, the language in question is capable of an innocent construction? Yeah, right in the beginning, before you even get to the defenses. So, Your Honor, we argue, and I believe, that it is very difficult to reconcile those two principles of law at the first step. Okay, but on the question of opinion, the cases seem to suggest that if the language is just sort of hyperbolic and highly rhetorical and exaggerated, that somehow not only does that make the claim fail, that it makes it fail because those kinds of things can be characterized as opinion. How does that work? Why is that an opinion? I can see why it might go to the question of whether it's defamatory because if the language is recognizably hyperbolic, nobody's going to take it seriously as an intended defamatory statement. But that doesn't make it an opinion. It just makes it non-actionable. Right, and I think that that would be at the second stage. So I don't get the conflation of those two notions. And I think that that would be at the second stage. Here you have allegations of very concrete facts along with statements of things in terms of the speaker's evaluation of the particular subject's character and integrity in his or its business calling. I do not believe that if you were to apply the principle that you question to its logical extreme, you could escape a defamation claim simply by ramping up the hyperbolic nature of your statement. And we think that just logically does not make sense. And, in fact, when you have a statement of something that looks like opinion followed by or in conjunction with a specific discussion of facts that support that position, then what might otherwise look just like an opinion is, in fact, a defamatory statement. And so we also believe that one of the byproducts of what the district court did and where it fell down is that it seemed to impose the burden on us at the first stage to the extent that the district court decision can be, you can parse it to actually distinguish between the two steps. But we believe that the burden of proof under Missouri law as to whether or not the language in question is subject to the opinion privilege is something that the defendant carries the burden of proof on. And, generally speaking, under Halliburton, for example, in Missouri, if you can look at the discrete language at the first step and determine that it's defamatory, then that ends the game at the motion to dismiss stage. You should proceed to the next phases of adjudication to look at everything in context to determine whether, for example, there's an opinion privilege. I'm going to reserve several minutes of my time. Very well. Thank you. Good morning, Mr. Crouser. Good morning, Your Honors. Cory Crouser, Brown and James for the Appelees Charles Peterson and Red Eye Rhino, LLC. The district court did not err in granting Appelees' motion to dismiss and applied the appropriate standard under Missouri law. Could I ask Judge Grunder's question here? I'm curious about this jurisdictional difficulty. Your Honor, my understanding, again, I reviewed the petition in this matter that was removed from the city of St. Louis to the U.S. District Court, Eastern District of Missouri. And in that petition, paragraphs 38 and 39 allege damages including lost revenue, lost profits and reputation, mental anguish, and as far as a jurisdictional amount in the prayer for relief, it alleges over $20,000 as well as punitive damages. Over $20,000? $20,000, not $25,000, Your Honor. Well, that's not the amount. Based on the well-pled petition, we removed the case. I mean, the jurisdictional amount for federal court. I understand the amount of controversy for diversity jurisdiction is $75,000. Based on the damages alleged, the general nature. Where did the $20,000 come from? Okay. I would speculate as to why I would have pled in excess of $25,000 if I were plaintiff's counsel in the wherefore or the prayer. Thank you. But that's the basis for removal. I can't comment on why appellant's counsel did not take up a motion to remand, stipulate that the damages were less than $75,000, and have the case remanded back to the City of St. Louis. Do you know whether we can consider punitive damages as part of the analysis? It's been a little while since I've looked at it, Your Honor, but I believe you can. Well, there's a lot of law on that, so. That is true. And I think Judge Arnold is correct that the initial focus or initial prong of the analysis that the district court applied correctly is whether these Facebook posts and the Facebook video, vlog, were capable of a non-defamatory meaning. That's part of the first prong of the analysis. And if, as a matter of law, the district court finds, as such, giving the language and the statements, verbal statements, their plain and ordinary meaning, then they're not actionable and the case is over. There is some case law that gets into opinions, rhetoric, hyperbole, whether those comments that look like opinions, as far as the first prong or the first step, are essentially non-defamatory. You don't get into the second part as far as a privilege. I may be confused. I thought the question was whether it's capable of defamatory meaning. You just said whether it's just the flip side of that. Yes, there is. Which is it, and what case says that? There are a couple cases that talk about Hammer v. City of Osa's Beach. If you look at, and I can go through the brief, there is the first prong, and it is, is it capable of a defamatory meaning? That is the standard. That's different than what you said, capable of a non-defamatory meaning. Right, because there are some state cases, generally, that get into the language about, is it non-defamatory? Because if you're saying it's defamatory, you're also saying it's – There are cases that say you can ask both questions. I'm sorry? There are cases that say you can ask both questions, because if the answer to the first – it's not really conflicting. If the answer to the first question is no, the case is over, because it's not capable of a defamatory meaning. Right? Correct. But if the answer to that question is yes, it doesn't mean that you can't ask the second question, and that is, is it capable of an innocent meaning? And if so, it's not actionable. I mean, you can imagine a legal world in which those two questions coincide without being contradictory. So my question is, is Missouri that legal world or not? Yes, I believe it is, based on Naziri. Okay, well, I think that some cases suggest that. Yeah, and looking at Naziri and other cases, I think so. But the Naziri case seems to suggest that, well, maybe these are contradictory, but never mind, because the answer is the same, whichever rule you apply. Right? Isn't that where we are in this? Yes. In our effort to understand Missouri law? That's my reading of Naziri. It's not necessarily the most elucidated. That's not what I'm talking about. Elucidated. It's not as clear, Your Honor, by any means. Okay. But I think that is the standard. The October 31, 2018 Facebook post, the November 18, 2018 video on Facebook, and then also the November 18, 2018 Facebook post by Mr. Peterson are nondefamatory, given their plain meaning. They're essentially his comments about, or his opinions about Mr. Turntine and the leak. The October 31st. What do you draw from that? It's in the complaint, but what's the, how would you summarize what's stated there? That transcribed statement. The video. The transcribed video. The November 18, 2018. Yes. It's essentially Mr. Peterson's response to Mr. Turntine about what happened with their business relationship with these vouchers and why Mr. Peterson believes that Mr. Turntine lied. He's a liar. These, and to get into some of the background just briefly, Mr. Peterson was the exclusive jersey seller for the Tournament of Champions. This dart league. That was discontinued, and there were statements by Mr. Turntine about Mr. Peterson after Mr. Peterson was no longer the exclusive dealer of those t-shirts. And there were vouchers that Mr. Peterson was going to use as a draw on these different events that would allow certain players with these vouchers to go to that final Tournament of Champions competition. Without getting into all the details, I think you basically said he called him a liar. Yes. And under Milkovich, didn't the Missouri Supreme Court basically say that calling somebody a liar damages the person's reputation and is therefore capable of defamatory meaning? I think it depends on context. You have to look at the various posts. Mr. Peterson's comment that Mr. Turntine's a liar is in response to Mr. Turntine's comments about business dealings. He's saying that he's a liar and censors his players. That's his opinion about that. Those are subjective statements that aren't verifiable by some data that can be reviewed. He says that Mr. Turntine is selfish and greedy because of the way these vouchers were not allowed to be used after he paid for them. Those are his opinions about Mr. Turntine. Selfish and greedy is sort of subjective, but liar, especially in a business context, would seem to me to tend to have a defamatory meaning because it undermines a person's reputation with respect to his business dealings. Those three things, liar, greedy, and manipulator, those are different kinds of assertions. I don't think the various posts in the video are specific enough to support a defamatory statement as far as Mr. Turntine being a liar about a certain business item. I think it's his comments in defense, Mr. Peterson's comments in defense, that he is a liar as a person. There are other cases. Generally speaking, you mean? Yes, generally speaking. He doesn't point to a specific part of his business where he has lied about a certain thing. It's his comments about Mr. Turntine. I think it was in a particular context with respect to their interactions in a very specific way, wasn't it? Well, yeah, and Mr. Turntine essentially called Mr. Peterson out for not donating to a charity, and Mr. Peterson, in response, says, no, that's not true. He's lying. He's a liar, generally. So there is some connection about activity going on, but he doesn't necessarily say that that statement in and of itself is a lie. I think he's talking about Mr. Turntine, and I think that's what the court was looking at, that this context of Mr. Peterson on this video vlog out to the whole Internet universe is like a public speech. It's his rhetoric. It's his comments. It's his fired-up hyperbole exaggeration stating his defense against Mr. Turntine. And even for me, it's a new medium, this Internet and everything that's out there as far as vlogging and people get on and have these conversations as if it's a public forum. And that's the context, I think, that the court examined with these Facebook posts, social media, and the video. This is Mr. Peterson defending himself. In fact, he's giving his opinions as to how I see it, what is going on here, explaining what his position is. And I think that's at the very essence of what our country is about, being able to speak your mind and stand your ground and state your defense and your thought about it without having to worry about being sued every time when you want to defend yourself and make a statement. Are you making a First Amendment argument? I think that's probably for another day, but I think there is some implication in that. And that really goes to, and I'm not making that today because I think that really probably gets into the second portion. I think that was one of the things, one of the considerations that informed the creation of this opinion privilege. Right. It may be embedded in the common law. Right, and I don't know that I necessarily get to that. So based on the court's analysis under Missouri law, it properly found that the Facebook post Well, let's see what you think of this. As I was reading this, it seemed to me, and I may be wrong about this, and I want to get your take. You've got the, in one part of the complaint, where it cites the words that were published here of manipulates, lies, censors, and some other words like that. And then you get to the November 18, 2018 video, and it looked to me like that was kind of a recitation of the history of the relationship that gave rise to those characterizations. Is that a valid way of looking at that? I believe it is. I think it does give some background. He goes through the vouchers and the history of their business relationship in that Facebook vlog or video. And that's where the court said the average listener, on page 11 of the district court's opinion, found that the average listener would find that this is non-defamatory, that he's giving his opinion as I see it and then describing the background as part of his defense. So it seemed to me that the district court was taking all this together. It was looking at all of this together, not one part, one statement in isolation, and then the video in isolation. He was looking at everything together. No, I believe the district court analyzed each post in the video under the counts one through three, libel, slander, libel, and then analyzed each section separately for each count. If the court has no further questions, my time's almost up. Appellees would request that this honorable court affirm the district court's dismissal of the allegations against it. Thank you. Thank you, Mr. Crozier. Mr. Kistner, some rebuttal? Yes, thank you. First of all, Your Honor, Judge Arnold, the two cases that appellees cite, Mandel and Ampleman, do contain language about whether or not the language in question is capable of an innocent interpretation, whether a reasonable reader would view them innocently. I simply have to state the appellant's disagreement as to whether or not that is reconcilable with the standard of whether the words are capable of defamatory meaning. I don't think the Missouri courts have done a good job of explaining that language and the language that appears in Mandel and Ampleman. I will note, importantly, Missouri did not decide it. Missouri ended up determining that it really wasn't necessary to resolve. That's what I said. Okay, I'm sorry. Smith v. Humane Society 2017 decision in Missouri Supreme Court explaining this analytical framework makes no mention of the capable of innocent or would a reasonable reader possibly find these words to be innocent. The position we stake out in our briefs is that Mandel and Ampleman, and that language should be, in effect, that second part of the first part of the test, simply cannot be reconciled. I want to take issue, though, with the issue as to whether or not the language in question in these three counts, whether it can be interpreted as just an opinion. What is remarkable about this sequence of posts is that it is related. There's a factual history as to what gave rise to this dispute. It is posted on the actual video on November 18th, and it goes into a lot of facts about what supports the statement that, for example,  Now, what that does is it suggests very strongly, and the cases that we cite look at this, if there are facts that are alleged that go along with something that in isolation could be viewed as an opinion, then you have a situation in which there's some context provided, and then you go to the next stage of adjudication where you can determine and you've got a base of facts to support the opinion. You can then, what allegedly is just the opinion, you can then achieve an adjudication to determine whether or not these factual statements actually were accurate, and that then provides a basis for, in effect, having an analytical framework down the road in an adjudication in which the court or perhaps a jury, more likely, can actually adjudicate whether the language that allegedly are opinions are actually opinions kind of coupled with facts and are actionable statements. And we think that that is exactly what happened here. If you look at the transcript of the video, I'll make note that it actually concluded with language about selfishness and greed of turn time. So embedded within that video itself is a statement of facts, the history of the dispute, and then you have something, words in isolation, he's selfish and greedy. That could be in isolation determined to be opinion, but it's coupled with facts that then can be adjudicated to determine whether there's a factual basis. And I think we think that that's important for the court to consider. We also think that, you know, these words that the defendants have used fit squarely within the framework of defamatory language that the Missouri courts have addressed. If you take a look at the Shepard v. Cotaway case that we've cited in our brief, you know, statements that somebody abuses someone or uses abusive words, those were determined to be actual defamatory statements in that case. And we think that the repeated use characterization of Jim Turrentine as a liar, coupled with facts that can then be adjudicated to determine whether that is just an opinion or whether it's a statement of fact are sufficient to certainly survive the motion to dismiss. The appellant's request that this court vacate the district court's judgment, remand the case for further proceeding, and we will be considering what we need to do to seek leave to file reply briefs on the jurisdictional issues that the court has raised. Thank you. Very well. Thank you, counsel. The court appreciates your appearance and arguments today. The case will be submitted and decided in due course.